UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHANA FREEDMAN,

    Plaintiff,

v.                                              Case No:   6:15-cv-1657-Orl-41TBS

SUNTRUST BANKS, INC. and
SUNTRUST MORTGAGE, INC.,

    Defendants.

## ORDER

Pending before the Court is Plaintiff's Expedited Motion for Extension of Time to File Motion for Class Certification and for Amendment of Pleadings (Doc. 96). Defendants oppose the motion (Doc. 99). The Court held a hearing on the issues presented on May 27, 2016, at which time it requested the transcript of a portion of the deposition testimony of Defendants' FED. R. CIV. P. 30(b)(6) witness. That transcript has been received (Doc. 112), and now, for the reasons that follow, the motion is due to be granted in part and denied in part.

The complaint in this putative national class action alleges that Defendants discriminate against credit applicants with disabilities who rely on Social Security Disability Insurance ("SSDI") or other long-term disability benefits to qualify for mortgage loans (Doc. 1, ¶ 2). Plaintiff brings this action

> on behalf of individuals who rely upon long-term SSDI (or other long-term disability benefits) as income and who were asked or required by SunTrust to provide medical information and/or assurances from the Social Security Administration regarding future benefits as a pre-condition for processing an application for a mortgage loan and/or obtaining a mortgage loan.

(Id., ¶ 78).

"A party seeking class certification must affirmatively demonstrate his compliance with [FED. R. CIV. P. 23]–that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (emphasis in original).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  Id. (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). The Rule 23(a) prerequisites are numerosity, commonality, typicality, and adequacy.[1] The requirements of at least one of the three subsections of Rule 23(b) must also be met.[2]  The burden is on the advocate for the class to establish the propriety of class

---

[1] Numerosity requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Commonality requires that "there are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).

[2] FED. R. CIV. P. 23(b) provides:
Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
(1) prosecuting separate actions by or against individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

certification.  Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997); Bussey v. Macon Cty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014).

Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  FED. R. CIV. P. 23(c)(1)(A).  Plaintiffs who bring a class action in this district have 90 days following the filing of the initial complaint within to move for a determination as to whether the case is to be maintained as a class action.  M.D. FLA. R. 4.04(b).  The Court recognizes that in many cases plaintiffs will require some discovery in order to meet their burden to satisfy the requirements for class certification under Rule 23.  This is why M.D. FLA. R. 4.04(b) provides that "[i]f discovery relating to class action issues is needed, the parties may move the Court for leave to take such discovery prior to the case management meeting."

Plaintiff filed this lawsuit in the United States District Court for the District of Columbia on September 16, 2014 (Doc. 1).  On December 4, 2014, she filed her consent motion to suspend or extend the deadline for filing a motion for class certification (Doc. 8).  She also asked the court to set a briefing schedule requiring her class certification motion to be filed on a date after the parties had an opportunity to conduct necessary discovery (Id. at 3).  The court granted the motion, stating that it would "set a class certification briefing schedule in the Initial Scheduling Order."  (Doc. 9).

---

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Defendants moved to dismiss Plaintiff's complaint for lack of personal jurisdiction (Doc. 14).  The issue was briefed and on September 21, 2015, the district court denied the motion (Doc. 29).  In the same order, the court transferred the case to the Middle District of Florida (Id.).  The case was actually transferred on October 5, 2015, and this Court entered standard orders the next day (Docs. 31-32, 35).

The parties met on November 20 and again on December 3 to conduct their initial case management conference (Doc. 72).  They filed their case management report on December 4, 2015 (Id.).  In the report, Plaintiff proposed an August 1, 2016 deadline for motions to add parties and amend the pleadings, and a February 6, 2017 deadline for filing a motion for class certification (Doc. 72-1).  Defendants proposed a deadline in one to two months to amend and add parties, and 90 days to file the class certification motion (Doc. 72-2).  Defendants also offered as a compromise, a May 30, 2016 deadline for the class certification motion (Id.).  The district judge held a hearing and on February 6, he entered an Order giving Plaintiff through May 30, 2016 to file her motion for class certification (Docs. 88-89).  The district judge also set a May 30 deadline for motions to amend the pleadings (Id.).

Federal Rule of Civil Procedure 16(b)(4) provides that once the court enters a scheduling order, the "schedule may be modified only for good cause and with the judge's consent."  The "good cause standard precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting FED. R. CIV. P. 16(b) advisory committee's note).  "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry."  Lord v. Fairway Elec. Corp., 223 F. Supp. 2d 1270, 1277 (M.D. Fla. July 1, 2002).  See also Barnette v.

Fed. Express Corp., No. 2:10-cv-471-FtM-36SPC, 2011 WL 2413437, at * 1 (M.D. Fla. June 14, 2001).

Plaintiff argues that there is good cause for a 90 day extension of the deadlines to file her motion for class certification and amend the pleadings because, despite her diligence, necessary discovery still is not complete (Doc. 96). Defendants argue that Plaintiff has not diligently pursued discovery, the information she seeks is not easily accessible or searchable, and it will not support class certification (Doc. 99 at 1-15). Defendants also argue that Plaintiff has not explained why she needs additional time to amend her pleadings, she does not deserve more time, and her request is untimely (Id. at 15-21).

Plaintiff served interrogatories and requests for production to Defendants on February 1, 2016 (Doc. 96, ¶ 5). This was the first (and to the Court's knowledge) only discovery propounded by Plaintiff. The Court has not seen the discovery, which Plaintiff says is "designed to obtain evidence establishing the Rule 23 factors, including numerosity, ascertainability, and manageability." (Id.). Plaintiff's request for production sought two categories of documents that are relevant to the current dispute.

First, she asked Defendants to produce copies of their loan policies and procedures. Plaintiff argues that before she can move for class certification she needs copies of all of the policies and procedures she is challenging.[3] Plaintiff explains that this information is necessary to show Defendants' discriminatory policy and the class wide application of that policy. Defendants agree that their policies and procedures are relevant to the class certification issues, and they represent that they produced this

---

[3] Where no source is indicated, the information comes from the May 27, 2016 hearing.

information months ago.   Plaintiff acknowledges the receipt of some policies and procedures but complains that she still does not have at least nine types of underwriting policies for multiple years.   The Court does not have sufficient information to decide when Defendants produced their policies and procedures or if their production is complete.

Second, Plaintiff asked for Defendants'[4] loan files for the relevant period, which the Court understands is September 16, 2009 to the present.   In their response to the requests for production, which the Court has not seen, Defendants objected to producing their loan files on multiple grounds, including that it would be unduly burdensome.

After receiving Defendants' responses and objections to the requests for production, counsel engaged in at least six telephonic meet and confers (Doc. 96, ¶ 6). They also exchanged what Plaintiff characterizes as "numerous detailed and substantive emails that attempt to highlight and work through discovery issues that are currently hindering Plaintiffs' ability to move for class certification, in an effort to resolve disagreements regarding the scope of Plaintiffs' discovery and narrow the issues which may have to be brought before the Court on a motion to compel." (Id.).   This process lasted two months during which Plaintiff explored with Defendants search and retrieval techniques to obtain information from the loan files (Id.).   She also proposed at least three different search protocols which Defendants rejected.   Not only were the parties' meet and confers unsuccessful, but Plaintiff complains that during this period, Defendants were slow to respond to her inquiries, requests, and suggestions.

---

[4] The loan files appear to be a SunTrust Mortgage, Inc., issue.   Nevertheless, for the sake of continuity and readability, the Court will continue to refer to "Defendants."

In their written discovery responses, Defendants indicated that they intended to produce responsive documents on a rolling basis and expected "to substantially complete … production by no later than April 15, 2016." (Id., ¶ 7). Defendants did not complete their production by April 15, and even if they had, Plaintiff says that amount of time would have substantially prejudiced her efforts to certify the class (Id.).

On March 18, 2016, Defendants informed Plaintiff that they were willing to discuss ways to review the loan files but that they were not agreeing to review all the loan files (Doc. 99 at 8). They assert that Plaintiff knew, months before she filed this motion, that Defendants had "no intention of producing the thousands of individual loan files that Plaintiff now claims she so desperately needs." (Id. at 7). During the hearing, counsel for Defendants represented that on at least two occasions he asked Plaintiff's lawyer if she really wanted all the loan files and she said "no." Plaintiff's lawyer did not refute this representation but, even if Plaintiff did not want the entire files, it is clear that since February she has wanted specific information from them.

Because Defendants were refusing to search the loan files, Plaintiff undertook to find a way to obtain the information she seeks (Doc. 96, ¶ 11). Plaintiff and Defendants conferred for weeks concerning Plaintiff's request for data fields and terms reflecting information captured in the loan files (Id.). Plaintiff wanted this information in hopes that it would help her identify methods for searching and facilitating Defendants' production of information from the files (Id.). It took Defendants more than a month to produce an incomplete data field list. Then, on March 23 and again on March 30, Plaintiff asked Defendants to produce ten sample loan files to assist her in developing a search protocol. On March 31, Defendants agreed and on April 2, they delivered the sample files.

Once she obtained the sample loan files, Plaintiff engaged electronic discovery

expert David Carns to analyze them (Doc. 96-1).  "Using commonly available technology and techniques (such as Optimal Character Recognition and full text searching), [Carns] was able to quickly identify documents that contained terms suggested by Plaintiff's counsel such as 'disability income' and 'disability' within three words of 'occupation.' These basic searches landed upon documents that appear to represent documents indicating that the borrower reported SSDI.  Using standard technology and search techniques, [Carns] was able to identify these documents within a matter of seconds." (Id., ¶ 5).   Based upon Carns' report, Plaintiff states that she "is in the process of conferring with Defendants' counsel regarding her request for production of potential class member loan files, and is prepared to seek the Court's assistance if necessary." (Id., ¶ 12).   Plaintiff seeks the information she expects to obtain from the loan files to aid her in establishing the ascertainability of the class, the number of people in the putative class, the commonality of Defendants' practices, and the common experiences of the class members (Id.).   Plaintiff acknowledges that once she receives the loan files or relevant parts of them, it will take time to locate and analyze the information she seeks in order to prepare her motion for class certification (Id., ¶ 14).

Defendants state that Carns' findings are factually wrong (Doc. 99 at 11).   They explain that the only reason Carns was able to search the ten sample loan files was because they converted them into a searchable format before producing them (Id.). According to Defendants, when their loan officers receive income information from loan applicants it is categorized using forty different income types including for example, wages, tips, alimony/child support, capital gains, and other types of income (Doc. 99-1, ¶ 4).   SSDI is not listed as a separate income category that can be queried in isolation (Id., ¶ 5).   Rather, it is combined in a broader category called "Social Security/Disability

Income" that includes, in addition to SSDI, social security income, pension income, military benefits, and other income sources (Id., ¶ 6).   For the period from September 16, 2009 to the present, there are over 150,000 loan files that contain information in the "Social Security/Disability Income" category (Id., ¶ 9).

Defendants represent that a two-step process is required before it is possible to electronically search the loan files.   First, the individual files must be accessed and manually downloaded (Id., ¶ 10).   Then, to review the files for particular applicants, Defendants must separately locate and export each individual loan file (Id.).   The files consist of PDF and TIFF images of separate documents which may or may not be in a text searchable format (Id.).   Even if the documents contain searchable text, the system does not have the technical capability to search the contents of the documents within the loan files (Id.).   The loan file system also does not have the ability to mass export documents related to the files (Id., ¶ 11).

Once the files are accessed they must be converted into a searchable format (Doc. 99 at 12).   The only way to do this is "a manual review of each loan, to ascertain or identify the number of individuals or each individual person who was asked or required (or informed they would be required) to provide information or documentation relating to the continuance of income derived from SSDI."   (Doc. 99-1, ¶ 12).   Defendants assert that even if they manually review the loan files "to ascertain a population of individuals that were in fact SSDI recipients," there is no way "in which to search the system for each of these individuals that were asked or required (or informed they would be required) … to provide medical information and/or assurances from the Social Security Administration." (Id., ¶ 13).

After the loan files are downloaded they must be converted into a searchable format using software such as Optical Character Recognition ("OCR") (Doc. 99-2, ¶ 5). "But first, the documents must be loaded into a database where an index of all searchable words can be created that will allow for fast and accurate searches to be performed." (Doc. 99 at 13). Defendants claim that "a large volume of documents can take hours or even days to import and index before they are electronically searchable." (Id.).

After this work is completed, Plaintiff will have to review and analyze the thousands of individual loan files to determine which have information indicating loan applicants who "'were asked or required … to provide medical information and/or assurances from the Social Security Administration.'" (Id. at 14-15) (quoting Doc. 1, ¶ 78). Defendants claim that no electronic search will substitute for a manual review of the individual loan files (Id. at 15).

Plaintiff first requested a FED. R. CIV. P. 30(b)(6) deposition of Defendants on March 30, 2016 (Doc. 96, ¶ 14). Due to the lack of production by Defendants, Plaintiff proposed that the deposition be bifurcated and that the first installment be held on April 16. Defendants objected to Plaintiff's proposed areas of inquiry and on May 6, Plaintiff submitted a new deposition topic list. Defendants responded that they were available for the deposition on May 27 (the date of the hearing) or in June.

By the time the hearing was held, Defendants had produced almost 175,000 pages of discovery (Doc. 99 at 4). Roughly 5,000 pages were furnished 24 hours before the hearing. Defendants describe this as a supplemental production including bulletins and policies adopted by Defendants within the last month, additional training materials, and emails related to complaint files.

On May 27 Plaintiff deposed Janice C. Bassett, who is Defendants' Rule 30(b)(6) witness concerning the systems they use to maintain loan files, the ability to query those systems, and the ability to export and search information contained in the loan files. Plaintiff's recollection of the testimony was that it is possible to search the STM Partners ("STM") database solely for social security income.   Defendants disagreed.   At the Court's request, counsel provided relevant excerpts of Bassett's testimony (Doc. 112). According to Bassett, the STM database can be queried for just the Social Security/Disability category of income (Id. at 22-23).   Unfortunately, the result is approximately 150,000 loan files which still include multiple types of income (Id. at 30-31). Bassett testified that the only way to narrow the results further would be a manual review of the files (Id. at 31-32).

This is the current status of electronic discovery in the case.   This case is a textbook example of why it is so important for parties to meet and confer at the earliest possible time to discuss issues surrounding the discovery of electronically stored information.   It also demonstrates the importance of early dialogue concerning what discovery on class questions will be needed and how to conduct that discovery efficiently and economically.   The Court does not know what the parties discussed before or at their Rule 26(f) conference, but it is apparent that more should have been done.   This is also a case that would have benefitted from the early involvement of electronic discovery experts on both sides.   Conversation between the experts should have significantly accelerated the time it has taken Plaintiff to learn what systems Defendants have, and what information those systems are capable of providing.   This is the sort of cooperation the Court expects from the parties in the discovery process.   A Rule 30(b)(6) deposition

should not be necessary to obtain straightforward information about a party's electronic information systems.

The Court's responsibility is to decide whether Plaintiff has shown good cause for a 90 day extension of the deadline to file her motion for class certification and motions to amend the pleadings.   To answer this question the Court must decide whether Plaintiff has diligently pursued the discovery she says she needs.   Diligence means that a party has worked earnestly, steadily, energetically and conscientiously to accomplish their goal.  Using this definition, the Court finds that prior to February 1, 2016 Plaintiff was not as diligent as she could have been.   After that date, Plaintiff acted diligently but not as effectively as she could have.

In December 2014, Plaintiff asked the District of Columbia court to suspend or extend the deadline to file her motion for class certification.   This evidences her awareness of her obligation to file a timely motion for class certification and that she required discovery to make that motion.   The court said it would include a briefing schedule in its initial scheduling order but almost ten months later, no scheduling order had been entered and the case was transferred to the Middle District of Florida.

When this Court received the case in October 2014, the parties were operating under the 90 day deadline for class certification motions established by M.D. FLA. R. 4.04(b).   But, Plaintiff's actions do not suggest a sense of urgency.   She could have, but failed to file a motion to conduct class certification discovery in advance of the Rule 26(f) conference.   When the Court asked why she did not file a motion for early discovery, Plaintiff said the parties were busy conferring about the nature of the action, debating whether it should be designated as a Track Two or Track Three case, they were briefing scheduling issues for the Court, and Plaintiff was briefing the motions to dismiss.   No

- 12 -

doubt Plaintiff was working on other aspects of the case, but the Court fails to understand why discovery and those other tasks could not have been performed concurrently. The result is that significant time was lost during which Plaintiff might have been conducting class certification discovery.[5]

After Plaintiff served her requests for production she attempted to work cooperatively with Defendants to obtain the information she seeks. That is what counsel are supposed to do. But, at some point Plaintiff should have recognized that her efforts were not being productive and she should have filed a motion to compel. Plaintiff knew in March, 2016 that Defendants were objecting to the production of their loan files and that they were unwilling to review all the files. At that point, she should have filed a motion to compel. Nobody knows what the outcome of that motion would have been, but the Court's ruling would have established the parameters for discovery and the parties could have proceeded accordingly. Plaintiff's failure to promptly file a motion to compel has unduly delayed the discovery process.

Even though the Court is critical of the manner in which Plaintiff has pursued discovery, it cannot say that since February 1, 2016 she has not acted earnestly, steadily, energetically, and conscientiously to obtain the information she seeks. Therefore, the Court finds good cause and **GRANTS**, albeit with some reluctance, Plaintiff's motion to extend to August 29, 2016 the deadline for filing Plaintiff's motion for class certification.

This brings the Court to Plaintiff's motion to extend for ninety days the deadline to file motions to amend the pleadings. After the hearing, Plaintiff filed a motion for leave to file a first amended complaint (Doc. 107). The Court will act on that motion in the ordinary

---

[5] The Court acknowledges that it can only speculate about what the ruling would have been had Plaintiff filed a motion for early discovery.

course.   At the conclusion of the May 27 hearing, the Court recognized that its decision would come after the May 30 deadline for filing motions for leave to amend and the motion for class certification.   For this reason, the Court tolled the deadline for fourteen days, i.e., through June 13, 2016.   The Court's written order only refers to the motion for class certification, but was intended to include motions to amend the pleadings (Doc. 108).  Accordingly, the Court finds that Plaintiff's motion for leave to amend was timely filed.  Plaintiff having filed a motion to amend, her request for a 90 day extension of the deadline for motions for leave to amend is **DENIED without prejudice**.

      **DONE** and **ORDERED** in Orlando, Florida on June 9, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record